# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Art Walker and Cynthia Walker** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | |
| **Alabama Gas Corporation Flexible** ) | |
| **Benefits Plan for Local Union 12030;** ) | |
| **and Blue Cross and Blue Shield of** ) | |
| **Alabama, Inc.** ) | |
| ) | |
| **Defendants.** ) | **JURY DEMAND** |

## COMPLAINT

Arthur Walker and Cynthia Walker, both plaintiffs in the above-referenced action, bring this action against Alabama Gas Corporation Flexible Benefits Plan for Local Union 12030 ("the Plan"), and Blue Cross and Blue Shield of Alabama ("BCBSAL").

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter under the Court's Federal Question jurisdiction. 28 U.S.C. § 1331. The claims are made pursuant to the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. 1132.

2. Venue is proper in this judicial district and division because this is the judicial district and division in which a substantial part of the events or omissions giving rise to the cause of action took place. 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Art Walker is over the age of nineteen (19), a resident of St. Clair County, Alabama, and is an ERISA plan participant and beneficiary under 29 U.S.C. §§ 1002(7) and (8).

4. Plaintiff Cynthia Walker is over the age of nineteen (19), a resident of St. Clair County, Alabama, and is an ERISA beneficiary under 29 U.S.C. § 1002(8).

5. Defendant Alabama Gas Corporation Flexible Benefits Plan for Local Union 12030 ("The Plan") is an employee welfare benefit plan, as that term is defined by 29 U.S.C. § 1002(1).

6. Defendant Blue Cross and Blue Shield of Alabama ("BCBSAL") is and Alabama corporation and a plan administrator as that term is defined by 29 U.S.C. § 1002(16); and a plan fiduciary as that term is defined by 29 U.S.C. § 1002(21).

## FACTUAL ALLEGATIONS

7. Art Walker has been an employee of Alagasco since approximately 1991. At all times since his hire, he was a participant in the employee benefits plan established by Alagasco, including the Plan, as defined above.

8.      At all times since Mr. Walker's hire, his wife Cynthia Walker has been a beneficiary of the Plan

9.      Mr. Walker paid for his family health coverage through payroll deductions during the course of his employment until approximately October of 2015. From time to time the Walkers used their health coverage provided by the Plan to pay medical providers, and there was no problem.

10.     In late 2014, Mr. Walker began to experience a series of health issues, causing him to miss a great deal of work time.

11.     At first, Mr. Walker used up all of his sick time, then in October of 2015, he was placed on long term disability through Alagasco's long term disability insurance provider.

12.     Mr. Walker continues on long term disability status with Alagasco.

13.     Per company policy, since October of 2015, Mr. Walker has continued to pay premiums for his family plan health insurance.  He has been billed by Alagasco for those premiums, and has paid them.

14.     Mr. Walker has been on long term disability status.  He has not been retired. In January of 2016, Mr. Walker was sent a "Benefits Confirmation" form by Alagasco.  That document listed him as a "full time" active employee, and was in employee group "LTD".  At that point, Mr. Walker was not retired, and was not

treated as a retired employee. If he were, he would have been sent correspondence from Alagasco's benefits office informing him of the benefits elections available to Alagasco retirees.

15. Mr. Walker's wife, Cindy, a defined beneficiary under the plan, began having serious health problems in late 2012 and into 2013, and was diagnosed with metastatic cancer in April of 2016. Due to her health condition, Mrs. Walker had to end her employment as a registered nurse at Outpatient Services East in 2013, and was placed on Social Security Disability in October of 2013.

16. In May of 2015, Cynthia Walker received correspondence from Medicare stating that, as a social security beneficiary, she automatically qualified for, and would receive Medicare Part A benefits. The same correspondence gave Mrs. Walker the option to elect, and pay for, Medicare Part B coverage. Mrs. Walker declined the Medicare Part B coverage because she was already covered under the Walker family's Alagasco policy, and there was no need to pay for two policies.

17. Mr. and Mrs. Walker's medical expenses between 2013, and the summer of 2016, were paid by the Plan, as administrated by BCBSAL, as they had always been in the past. Things changed, though, in the summer of 2016.

18. In or around May of 2016, BCBSAL sent a form to the Walkers asking if Cindy had any health insurance coverage outside of the Alagasco benefits plan.

The Walkers indicated that they had Medicare, Part A, which they became eligible for through Mrs. Walker's social security disability determination as referenced above, but that was the only policy in effect.

19.    In July of 2016, Cindy Walker was informed by a medical provider that BCBSAL would not approve payment for one of her cancer treatments.  Mrs. Walker called BCBSAL and was informed that BCBSAL had classified Mr. Walker in a "retirement" status.

20.    BCBSAL told Mrs. Walker that, under the plan, because Mr. Walker was "retired" she was not covered, at least primarily, and that she needed to be on Medicare, Part B.

21.    When the Walkers informed BCBSAL that Mr. Walker was not retired, and that even though he was on long term disability, he was still classified as "Active", they were told that this would be corrected and not to worry.  Mrs. Walker was approved for the treatments that had previously been denied. This would only be a temporary resolution to the problem.

22.    Shortly after these treatments, the Walkers began to get EOB forms from BCBSAL stating that the Plan would only pay that which Medicare Part B would not cover. In essence, BCBSAL had reversed its earlier "reversal", and was treating the Walkers as if they had Medicare, Part B coverage.  BCBSAL was taking the

position that Mr. Walker was retired, even though: (a) he was not retired; and (b) he was still listed as an "Active" employee.

23. The Walkers now found themselves in an unenviable position. The benefits plan that they were paying for refused coverage, and they had not signed up for Medicare Part B when presented that option, because it was their understanding that they already had coverage.

24. Mr. Walker decided to escalate his concerns, and contacted Liddia Jordan in Alagasco's insurance and benefits department on August 29, 2016. The Walkers were told, at first, that they were covered. Then, however, they were told that they were not covered, and that Mrs. Walker needed to sign up and pay for Medicare, Part B. Mr Walker was told that his status had changed when he went on long term disability, and that under the plan, BCBSAL would only be considered a secondary payer.

25. On August 30, 2016, after being denied for a CT scan relating to Mrs. Walker's cancer treatment, Mr. Walker decided to further escalate the situation while at the same time beginning the process of applying for Medicare, Part B, as there were substantial medical bills, both past, and on the horizon, and they did not want to be uncovered. Part of the process of applying for Medicare, Part B was that Mr Walker's employer, Alagasco, had to fill out some information about coverage

on social security administration forms.  Mr. Walker sent those forms in to Liddia Jordan at Alagasco.

26.    On September 1, 2016, Liddia Jordan of the Alagasco benefits office called Mr. Walker and told him that he should have gotten paperwork with his long term disability package informing him that he needed to sign Cynthia up for Medicare, Part B. Liddia Jordan did fill out the above-referenced forms for Medicare, Part B coverage, and indicated thereon that the benefits plan was the "primary payer" from March of 1991 to "September of 2015, or until Medicare is approved."

27.    Meanwhile, the Walkers were told for the first time by the social security office that they had an eight month window from the time Mr. Walker's "status changed" in October of 2015, to apply for Medicare, Part B, and now that this window had passed, the Walkers could not apply for Medicare, Part B until July of 2017.  This obviously caused the Walkers great distress.  That decision was later reversed, and now Cynthia Walker has been approved for Medicare, Part B, as of September 1, 2016.

28.    However, the Walkers are now being rebilled for bills that the plan, as administered by BCBSAL, paid from October, 2015, until coverage began with Medicare, Part B.  In addition, they continue to have to pay for Medicare, Part B, when, rightfully, Mrs. Walker should be covered under the Alagasco policy. Also,

payments for Mr. Walker's medical expenses from October, 2015, have been affected. Some of his medical expense payments have been rescinded, because BCBSAL's position, on behalf of the plan, is that his deductible had not been met on certain billings, so he is getting rebilled for some of his own medical bills that were, at first, paid for.

29.    The Plan and its appointed administrator, BCBSAL have wrongly, arbitrarily, and capriciously misinterpreted the provisions of the Plan. Mrs. Walker, as a Plan beneficiary, was covered under the Plan provisions, and is still covered. The Plan provisions specifically provide for her ongoing coverage. The Plan, explaining its relationship to Medicare, contains a specific provision relating to individuals eligible for Medicare due to disability, the Plan states:

> <u>Disabled Individuals</u>:   If you or a dependent is eligible for Medicare due to disability and is also covered under the plan by virtue of your current employment status with the group, Medicare will be considered the primary payer (and the plan will be secondary) if your group normally employed fewer than 100 employees during the previous calendar year. **If your group normally employed 100 or more employees during the previous calendar year, the plan will be the primary and Medicare will be secondary.**

(emphasis added). Mrs. Walker became eligible for Medicare due to disability. There have been more than 100 employees covered by the plan during all relevant periods. As such, the Plan will be [is] primary and Medicare will be [is] secondary.

8

30.     Mr. Walker has remained, according to Alagasco's own records, an active employee, who has paid for his benefits. His long term disability did not in any way, shape, or form effect his, or his dependents' status as covered persons, and the rules for Medicare eligibility as related to disability, are clear, as listed above.

31.     On October 27, 2016, pursuant to the terms of the Plan, the Walkers appealed the denial of benefits. The Plan states that past service adverse benefits determinations may be made by sending a letter to Blue Cross and Blue Shield of Alabama; Attention: Customer Service Appeals; P. O. Box 12185; Birmingham, Alabama 35202-2185. The Walkers sent their appeal letter to this address, certified mail, return receipt requested.  According to the return receipt, BCBSAL received the appeal on November 10, 2016.

32.     The Plan states that appeals by Plan beneficiaries will be determined within sixty (60) days. In this case, sixty (60) days passed, and Plaintiffs were not informed of the outcome.

33.     To Plaintiffs' knowledge, nothing has ever been done with the appeal on the BCBSAL side.

34.     Because Plaintiffs have fully complied with any obligation to go through an administrative process, this action may now proceed, even though there has been no resolution of that administrative appeal.

# COUNT I

## (ERISA Claim For Benefits Against The Plan And BCBSAL)

35. Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 34 above.

36. The Plan is properly a defendant in an action to recover benefits under 29 U.S.C. § 1132(a)(1)(B), by authority of 29 U.S.C. § 1132(d).

37. Additionally and/or alternatively, BCBSAL is a proper defendant to this action. BCBSAL has been delegated the authority to administer the health benefits under the Plan, and has wrongly denied benefits due under the terms of the Plan.

38. ERISA, 29 U.S.C. § 1132(a)(1)(B) provides that plan participants and beneficiaries may bring civil actions "to recover benefits due … under the terms of his plan" and "enforce … rights under the plan. Pursuant to the statutory cause of action, Plaintiffs request the following:

    a.    An Order of this Court directing that Defendants pay any medical bills that have not been paid due to a denial based upon the improper assertion that Mr. Walker's status had changed and/or due to a determination that the Walkers needed to be on Medicare, as described above.

    b.    A reimbursement of all amounts paid by the Walkers to any medical provider as the result of the wrongful denials referenced above.

    c.    The reinstatement of Mr. Walker as an active employee, and the Plan as primary payer according to the terms of the Plan.

    d.      Reimbursement for all expenses paid by the Walkers in obtaining Medicare Part B.

    e.      A reasonable attorney's fee, plus the costs of this action pursuant to 29 U.S.C. § 1132(g).

                Respectfully Submitted,

                /s/ Brian M. Clark
                Brian M. Clark
                Attorney for Plaintiffs

WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0530
bclark@wigginschilds.com

**Serve Defendant**
Alabama Gas Corporation
Flexible Benefits Plan for
Local Union 12030
Registered Agent: CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

**Serve Defendant**
Blue Cross and Blue Shield of Alabama, Inc.
Registered Agent: Michael L. Patterson
450 Riverchase Parkway East
Birmingham, Alabama 35244